Burton M. **FITZSIMMONS, et
ux., Appellants,**

v.

Alvin E. **ANTHONY, et al., Appellees.**

No. 13–86–089–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Per Hardy, San Antonio, for appellants.

Bruce W. Bodner, San Antonio, for appellees.

OPINION

NYE, Chief Justice.

Appellants, Burton M. and Fannie Lee Fitzsimmons, challenge the judgments of the trial court, which ordered specific per-

formance of their contracts to convey land to the appellees. We affirm.

The appellees' suits for specific performance were consolidated for trial. Appellees, Alvin E. Anthony, Errol Ray Warren, and Milven D. Warren, Jr., had each entered into a contract of sale with the appellants. The three contracts were executed on May 24, 1983. Attached to each contract was a metes and bounds description of the three contiguous tracts which the appellees were purchasing. Each of the contracts was a standard Texas Veterans Land Program "Application and Contract of Sale." Each contained the following provision:

14. In no event shall this contract be terminated by the veteran or seller before the expiration of 120 days from the date hereof except by written consent of both parties and written notice thereof to the Veterans Land Board of the State of Texas. The Veterans' Land Board of the State of Texas reserves the right to cancel after acceptance of the assignment of the contract if the seller or veteran fails to put forth reasonable efforts to comply with the terms hereof.

The parties agreed that the one hundred twentieth day was September 21, 1983. Ms. Louceyette Voges, owner of the Wilson County Abstract Company at the time in question, testified that, after examining the title to the land and receiving approvals of loans to the appellees, she sent the appellees' three commitments to the Veterans Land Board sometime in the middle of August 1983. The Veterans Land Board sent letters notifying the appellees that it had approved the transactions on September 8, 13, and 14, 1983. It was waiting for the comptroller's office to issue state warrants (checks) for the amounts approved. By letters of September 20, 21, and 23, 1983, the Board notified the appellees that the purchases were ready to be closed, and that they should contact the title company to set a date for closing.

Appellant Burton Fitzsimmons admitted that he received copies of these letters, knew of their contents, and knew that the deal was proceeding to a point that the closing date was near. Nevertheless, on either Friday, September 23, or Monday, September 26, he wrote the Veterans Land Board and informed them that he and his wife wished to cancel the sale.

■ In ordering specific performance, the trial court filed findings of fact and conclusions of law. An appellate court will uphold a trial court's findings of fact unless they are manifestly erroneous and without evidence to support them or are so against the great weight and preponderance of the evidence as to be manifestly wrong. *Trevino v. Castellow Chevrolet-Oldsmobile, Inc.*, 680 S.W.2d 71, 75 (Tex. App.—Corpus Christi 1984, no writ); *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.*, 678 S.W.2d 707, 713 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ Here, the trial court found that the contract neither specified a date for performance nor stated that time was of the essence. It concluded that, in the absence of "time of the essence" provisions and stipulated performance dates, parties are entitled to a reasonable time to perform their part of a contract. The court further concluded that the parties had demonstrated their willingness to perform before the appellants' attempt to cancel the sales on September 26, 1983. The conclusion of law filed by the trial court was correct.

■ Generally, where no time for performance is stated, the law will imply a reasonable time. *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Joines v. Burke*, 540 S.W.2d 798, 801 (Tex. Civ.App.—Corpus Christi 1976, no writ). Appellants contend that the 120–day period referred to in paragraph fourteen of the contracts, set out above, either 1) caused the contracts to expire after 120 days; or 2) gave either party the right to unilaterally cancel after 120 days; or 3) set 120 days as a reasonable time for performance. We disagree. The language of paragraph fourteen merely states the proper method of cancellation of the contract within the

120–day period. It is silent about whether a party may cancel after that time.

The delay in closing in this case was occasioned by waiting for the Board's approval, and no evidence was introduced that appellees were in any way responsible for the delay. In fact, all of the evidence was to the contrary. All three of the appellees were in touch with the title company on or before September 26, inquiring about setting a closing date. No closing date was set because the title company had already been notified that the appellants would not perform. Where a third party's approval is required as a condition of performance, it is reasonable to delay performance until the approval is received. *See Hubler v. Oshman,* 700 S.W.2d 694, 698 (Tex.App.—Corpus Christi 1985, no writ); *Carter v. Gerald,* 577 S.W.2d 797, 799–800 (Tex.Civ.App.—Austin 1979, writ ref'd n.r. e.).

The judgment of the trial court is affirmed.